# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **DONNA POIMBOEUF**<br>**ROBERT POIMBOEUF**<br>**D&G HOLDINGS, LLC**<br>**formerly t/a DOCTORS LAB**<br><br>                    **Plaintiffs,**<br><br>   **vs.**<br><br>**THE UNITED STATES OF**<br>**AMERICA**<br><br>                    **Defendant.** | **Civil No.:** _____ |

## COMPLAINT FOR UNAUTHORIZED
## DISCLOSURE OF RETURN AND RETURN INFORMATION

NOW INTO COURT, by and through undersigned counsel, comes the Plaintiffs, Donna Poimboeuf, Robert Poimboeuf, and D&G Holdings, LLC, formerly operating as "Doctors Lab," and hereby brings this action for damages against the United States of America pursuant to Title 26 United States Code, Section 7431 for the unauthorized disclosure of Plaintiffs' return and return information.  In support of their cause, Plaintiffs state as follows:

## I.  PRELIMINARY STATEMENT

1. This action arises from the multiple unauthorized and unnecessary disclosures of return and return information made by Special Agent Jamie

Knighton of the Criminal Investigation Division of the Internal Revenue Service to various friends, acquaintances, and business associates of the Plaintiffs.

2. Upon information and belief, Special Agent Jamie Knighton's investigation of Plaintiffs was initiated at the request of her husband, Chris Knighton, who works as an investigator for the United States Attorney's Office in Shreveport, Louisiana.

## II.  THE PARTIES

3. From 1986 until April 2016, D&G Holdings, LLC, trading as "Doctors Lab" operated as an independent medical laboratory providing vital laboratory services to nursing home and other homebound persons throughout Louisiana and eastern Texas.   Although closed for business, D&G Holdings LLC is a taxpayer and remains in good standing with the Louisiana Secretary of State and maintains its capacity to bring this action.

4. Plaintiffs Donna and Robert Poimboeuf, husband and wife, are United States taxpayers residing in Shreveport, Louisiana and are citizens of the United States of America.  Donna and Robert Poimboeuf were principals of D&G Holdings, LLC.

5.  Pursuant to 26 U.S.C. § 7431, the defendant in this action is the United States of America.

## III.      JURISDICTION AND VENUE

6.  This action arises under the 26 U.S.C. § 7431(a)(1), which permits taxpayers to bring a civil action for damages against the United States in a district court of the United States for the unauthorized inspection or disclosure of any return or return information of the taxpayer.

7.  This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas.

## IV.   STATEMENT OF FACTS

9.  From at least in or about January 2014, Chris Knighton, an investigator for the United States Attorney's Office in Shreveport, Louisiana, has participated in a criminal grand jury investigation of Plaintiffs.

10.  The primary focus of Chris Knighton's investigation involves spurious allegations that Plaintiffs fraudulently billed Medicare for mileage incurred when Doctors Lab's phlebotomists travelled to Louisiana and Texas nursing homes to draw blood samples for diagnostic laboratory testing as ordered by treating physicians.

11.  On the basis of the same allegations, Medicare administrative contractors wrongfully recouped millions of dollars owed to Plaintiffs for

diagnostic laboratory services provided to Medicare beneficiaries residing in Louisiana and Texas nursing homes.  These wrongful recoupments were the subject of two separate lawsuits filed in the United States District Court for the Western District of Louisiana wherein the Plaintiffs sought injunctive relief.  *See D&G Holdings, LLC v. Burwell, et al.,* Case No.: 5:15-cv-02109 (W.D.La. Jul. 2015) and *D&G Holdings, LLC v. Burwell, et al.,* Case No.: 5:15-cv-02624 (W.D.La. Nov. 2015).

12.    Although the recoupments had already forced D&G Holdings, LLC out of business, on July 13, 2017 the Medicare Appeals Council reversed completely the overpayment determinations that were the foundation for the recoupments, "finding that the underlying bases for the overpayment are not sufficiently supported by evidence of record."

13.    Pursuant to 42 U.S.C. § 1395ddd(f)(2)(B), the United States must now repay to D&G Holdings, LLC all of the funds wrongfully recouped plus interest. Enforcement of the final determination of the Medicare Appeals Council entered on July 13, 2017 is now the subject of pending litigation in the Western District of Louisiana.  *See D&G Holdings, LLC v. Price, et al.,* Case No.: 5:17-cv-01045 (W.D.La. Aug. 2017).

14.    The criminal investigation conducted by Chris Knighton since at least January 2014 has not resulted in any charges against Plaintiffs or anyone else.

15.    Upon information and belief, Chris Knighton asked his wife, Jamie Knighton, a Special Agent of the Internal Revenue Service (IRS) Criminal Investigations Division (CID), to initiate a criminal tax investigation of Plaintiffs and/or to assist in the ongoing grand jury investigation of Plaintiffs.

16.    The IRS Manual permits IRS CID Agents to participate in grand jury investigations only in two very specific circumstances.   IRS Manual, Section 9.5.2.2 (11/05/2004) permits IRS CID Agents to participate in grand jury investigations that are either requested by the IRS or by an attorney for the United States.  "In both IRS initiated requests and requests initiated by an attorney for the government, the special agent must prepare Form 9131, Request for Grand Jury Investigation. Criminal Tax (CT) Counsel reviews the Form 9131 and the accompanying exhibits and prepares a Criminal Evaluation Memorandum (CEM) to the Special Agent in Charge (SAC) recommending action. Form 9131 must be signed by the SAC." IRS Manual, Section 9.5.2.3.1 (06/24/2014).

17.    "All grand jury requests [made by the IRS] involving potential tax and/or tax related violations must be approved by the supervisory special agent (SSA) and reviewed by CT [Criminal Tax] Counsel. Criminal Tax Counsel prepares a CEM [Criminal Evaluation Memorandum] to the SAC recommending action. The grand jury request must then be approved by the SAC." IRS Manual, Section 9.5.2.3.1.5 (06/24/2014).

18.     When an attorney for the United States requests IRS CID's assistance in a grand jury investigation, the request should be made in writing to the SAC. IRS Manual, Section 9.5.2.3.1.2 (11/05/2004).   "If the SAC [Special Agent in Charge] believes that CI [Criminal Investigation] should participate in the grand jury investigation, the SAC or a designee will advise the attorney for the government of the IRS procedure for approving the request, and will assign a special agent to prepare Form 9131, Request for Grand Jury Investigation." IRS Manual, Section 9.5.2.3.1.3 (11/05/2004). "Criminal Tax Counsel reviews the Form 9131 and the accompanying documents/exhibits and prepares a CEM to the SAC recommending action." *Id.*

19.     No statute, regulation, policy or other authority permits IRS CID agents to participate in grand jury investigations because their spouse asks them to. Special Agent Jamie Knighton's participation in a grand jury investigation at the request of her husband is not authorized by the IRS and creates a clear conflict of interest.

20.     On May 23, 2017, Special Agent Jamie Knighton and another unidentified gentlemen arrived at the offices of Knuckols Duvall Hallum & Co. located at 204 S. Wellington, Marshall, Texas 75670, and asked to speak with Robert Duvall, Plaintiffs' former certified public accountant.

21.     During the meeting with Mr. Duvall, Special Agent Jamie Knighton informed Mr. Duvall that she was conducting a "criminal investigation of Donna and Robert Poimboeuf and their company D&G Holdings, LLC."

22.     Special Agent Jamie Knighton also stated to Mr. Duvall that Donna and Robert Poimboeuf were enjoying an unjustified "high lifestyle," and that the criminal investigation sought to determine the source of funds to support that lifestyle.

23.     Special Agent Jamie Knighton provided Mr. Duvall a grand jury subpoena for Mr. Duvall to produce Plaintiffs' financial records relating to tax years 2011-2015.

24.     On November 17, 2017, Special Agent Jamie Knighton and another unidentified gentlemen arrived at the offices of Carr Riggs & Ingram, LLC and asked for Hardy Foreman, Plaintiffs' current certified public accountant.

25.     After telling Mr. Foreman he "knew she was coming" and that he "should be ready to answer her questions," Jamie Knighton, wearing a velvet tracksuit, identified herself as an IRS CID agent and displayed her credentials. Mr. Foreman assured Knighton he did not know she was coming, but that he would be happy to speak with her.  Upon entering a conference room in which Mr. Foreman, Jamie Knighton and the unidentified man were present, Jamie Knighton became very aggressive in her questioning of Mr. Foreman.  Knighton immediately asked

whether Mr. Foreman "knew Mr. and Mrs. Poimboeuf" and whether he "knew Mr. and Mrs. Poimboeuf were involved in tax evasion."

26.     After Mr. Foreman stated only that Mr. and Mrs. Poimboeuf were his clients, Knighton asked whether Foreman had been to the Poimboeufs' residence and "whether he knew the type of high lifestyle they were enjoying."  When Mr. Foreman informed Knighton he had never visited the residence, Knighton stated, "whether you are aware of it or not, the Poimboeufs are enjoying a very high lifestyle."  Mr. Foreman informed Knighton that he was aware only of loans the Poimboeufs had taken over the past few years in an attempt to keep their business open because of Medicare's recoupment of monies owed to D&G Holdings for services provided to nursing home residents, and that they would be spending their creditors' funds to maintain any sort of "high lifestyle."

27.     Knighton then asked Mr. Foreman whether he had visited the Poimboeufs' laboratory.  After informing Knighton he had been to the laboratory in Shreveport, Knighton asked Mr. Foreman whether he had visited the laboratory in Pleasant Hill Louisiana.  He had not.

28.     Special Agent Knighton had several three-ring binders in her possession during the interview.  Knighton showed Mr. Foreman one binder containing Citizens National Bank statements related to D&G Holdings dating back to 2012.  Knighton pointed to the main operating account and asked Mr.

Foreman whether "he was aware the account existed at Citizens National Bank, and if he had seen it before that moment."  When Mr. Foreman stated he couldn't recall without looking at his records, and that he would look at his file to determine whether he was aware of the particular account, Knighton stated, "that will not be necessary."

29.    Special Agent Knighton then asked Mr. Foreman whether he had received all applicable 1099-Misc. forms from the Poimboeufs, particularly "the one issued by Novitas Solutions, Inc."  Once again, Mr. Foreman could not recall what documents he may have received from the Poimboeufs nearly a year before the interview.

30.    Special Agent Knighton then asked Mr. Foreman whether he had met Mr. Terrence Demease and if he knew his job responsibilities at D&G Holdings, LLC.  Mr. Foreman told Knighton he had met Mr. Demease, but was unaware of his exact job functions.

31.    Upon concluding the interview, Knighton left a grand jury subpoena for Mr. Foreman to produce Plaintiffs' financial records relating to tax year 2015.

32.    On or about May 16, 2016, Special Agent Jamie Knighton and another unidentified gentlemen arrived at the workplace of Camille Millen, a friend of Mr. and Mrs. Poimboeuf.  During this meeting, Knighton informed Ms. Millen that Knighton was conducting a criminal investigation of Mr. and Mrs.

Poimboeuf.  During the interview, Knighton informed Millen the Poimboeufs were enjoying a "high lifestyle" and asked multiple questions of a personal nature relating to Mr. and Mrs. Poimboeuf.  When Ms. Millen explained she had known Mr. and Mrs. Poimboeuf for a long time and that they were "very good people," Knighton replied, "good people are not under investigation by the federal government for tax crimes."  Knighton left a grand jury subpoena with Ms. Millen for the production of records.

33.     In or about May 2017, Special Agent Jamie Knighton and another unidentified gentlemen arrived at the workplace of Tammy Jackson, a friend of Mr. and Mrs. Poimboeuf.  During this meeting Knighton informed Ms. Jackson that she was an IRS CID agent and that she "was conducting a criminal investigation of Mr. and Mrs. Poimboeuf."  Knighton left a grand jury subpoena with Ms. Jackson for the production of records.

34.     In or about May 2017, Special Agent Jamie Knighton and another unidentified gentlemen interviewed John Manno, a friend of Mr. and Mrs. Poimboeuf from the Krewe of Gemini.  During the interview Knighton informed Mr. Manno that she was an IRS CID agent and that she "was conducting a criminal investigation of Mr. and Mrs. Poimboeuf, and of D&G Holdings, LLC."  Mr. Manno informed Knighton he did not have any records relating to the Krewe of

Gemini.  Mr. Manno described Knighton's demeanor during the interview as "not very professional or nice."

35.    In or about April 2017, Special Agent Jamie Knighton and another unidentified gentlemen interviewed Pam Atchinson, a friend of Mr. and Mrs. Poimboeuf from the Shreveport Regional Arts Council.  During the interview, Knighton presented Ms. Atchinson with a grand jury subpoena requesting records relating to Plaintiffs for the period 2011 – 2015.  Ms. Atchinson made notes of her meeting with Knighton and the unidentified man.  Her notes reflect that when she asked "what was this all about," Knighton replied the IRS "was performing an internal audit of Mr. and Mrs. Poimboeuf, and of D&G Holdings, LLC" and that the investigation was not concerned with the Arts Council.

36.    At no time has Special Agent Knighton requested information from Mr. or Mrs. Poimboeuf, or from D&G Holdings, LLC.

**V.    Statutory Framework**

37.    The Internal Revenue Code, 26 U.S.C. § 6103(a), provides that, "Returns and return information shall be confidential, and except as authorized by this title—(1) no officer or employee of the United States … shall disclose any return or return information obtained by her in any manner in connection with her service as such an officer or employee or otherwise under the provisions of this section."

38.    The term "return information" is defined broadly and includes:

> (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(a)(2)(A); *Payne v. United States,* 289 F.3d 377, 381 (5th Cir. 2002)(recognizing "'return information' is defined broadly"); *Snider v. United States,* 468 F.3d 500, 506 (8th Cir. 2006)(same); *Mallas v. United States,* 993 F.2d 1111, 1118 (4th Cir. 1993)(same).

39.    The IRS Manual recognizes the expansive definition of "return information."  IRS Manual Section 9.3.1.2 (06/05/2015) provides in part: "The statutory definition of **return information** is very broad and relates primarily to that information gathered during the course of an investigation that did not come from the taxpayer or his/her representative. It includes any information other than a taxpayer's return itself, which the IRS has obtained from any source or developed through any means that relates to the potential liability of any person under the

IRC for any tax, penalty, interest, fine, forfeiture or other imposition or offense."

*Id.*

40.    The IRS Manual goes on to say that, "Return information includes information extracted from a return (e.g., the names of dependents, locations of business assets, bank accounts, etc.) [and] examples include: (a) taxpayer identifying information, i.e., name, address or TIN; (b) the fact that a person has filed a return; [and] (c) the fact that a person is under investigation; . . ."  IRS Manual Section 9.3.1.2 (06/05/2015).

41.    "The term 'disclosure' means the making known to any person in any manner whatever a return or return information."  26 U.S.C. § 6103(b)(8).

42.    The IRS Manual provides specific guidance to Special Agents conducting witness interviews.  IRS Manual Section 9.4.5.6 (02/01/2005) provides:

**Conduct During Interview**

1. During the course of the interview, be adaptable and flexible, follow through on questions asked, and ensure that the basic questions such as who, what, where, when, how, and why have been addressed. **Special agents will refrain from characterizing investigations as "criminal" except for the initial interview of the subject in an administrative investigation or in those instances where this disclosure is necessary to obtain the information sought. Such a disclosure could be necessary if the witness is disinclined to cooperate**.
2. Criminal Investigation (CI) has an interest in conducting its investigations discretely to avoid unnecessary embarrassment to the subject. Adhering to these procedures

will help achieve this goal. Routine investigative inquiries often can be made with minimum disclosure of information.

a. For example, if a special agent contacts a neighbor to learn if a witness resides at a particular address, it is often not necessary to disclose that they are a special agent conducting a criminal investigation to obtain the information. The exercise of appropriate discretion when contacting potential witnesses is the hallmark of professionalism.

IRS Manual Section 9.4.5.6 (02/01/2005)(emphasis supplied).

43.     Another section of the IRS Manual provides similar guidance to IRS

CID agents contacting witnesses as part of a grand jury investigation:

**Witness**

1. Special agents are authorized to display their badges and credentials, make an affirmative statement that they are special agents with the IRS, CI and identify the person under investigation. Below is a sample introduction.

Mr. or Ms. XXXXXX, my name is John Doe, I am a special agent with IRS, CI (display credentials for examination and introduce any other officials present). I am conducting an investigation of Mr. or Ms. XXXXX and I would like to ask you some questions regarding this matter.

**Note:**

In the above example the special agent made no affirmative statement characterizing the investigation as being "criminal" in nature. **Special agents will refrain from characterizing investigations as "criminal" except in those instances where this disclosure is necessary to obtain the information sought. Such a disclosure could be necessary if the witness was disinclined to cooperate.**

IRS Manual Section 9.4.5.11.3.1.4 (05/15/2008)(emphasis supplied).

44.     IRS Manual Section 9.4.5.6.4.3 (05/15/2008) instructs special agents, *inter alia,* that, "When interviewing witnesses, the special agent must remain objective and refrain from making comments regarding the subject that could be construed as derogatory."

45.     The Internal Revenue Code, 26 U.S.C. § 7431(a)(1) provides that, "If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States."

46.     There are two potential statutory defenses, neither of which reasonably may apply in this case.  First, "an internal revenue officer or employee . . . may, in connection with [her] official duties relating to any . . . civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the [investigation]." 26 U.S.C. § 6103(k)(6).  "Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation." *Id.*

47.   Upon information and belief, the unauthorized disclosures of return information made by Special Agent Knighton in this case were not made by her "in connection with [her] official duties" because her participation in the grand jury investigation at the invitation of her husband, and not in connection with any proper IRS request or request made by any attorney for the government, remained at all times unofficial and improper.  Accordingly, 26 U.S.C. § 6103(k)(6) cannot apply.

48.   26 U.S.C. § 6103(k)(6) also cannot apply because none of the unauthorized disclosures of return information made by Special Agent Knighton in this case were "necessary" to obtain the information sought.  Pursuant to IRS regulations, the special agent must, at the time of the disclosure and based upon the facts and circumstances, reasonably believe disclosure of the return information is "necessary to perform properly [her] official duties."  26 C.F.R. § 301.6103(k)(6)-1(c)(1).  The term "necessary" in this context means "appropriate and helpful in obtaining the information sought."  *Id.*  Thus, 26 U.S.C. § 6103(k)(6) cannot apply because Special Agent Knighton was not performing official duties at the time of her disclosures and also because her disclosures were gratuitous and totally unnecessary to obtain the information sought.  Disclosures under 26 C.F.R. § 301.6103(k)(6)-1(c)(1) "may not be made indiscriminately or solely for the benefit of the recipient…"  *Id.*  As noted in the IRS Manual, "Such a disclosure could be

necessary if the witness was disinclined to cooperate," however, each of the witnesses identified in this Complaint was completely cooperative and willing to provide the information sought without any disclosure of Plaintiffs' return information.

49.   Disclosures under 26 U.S.C. § 6103(k)(6) must not only be necessary, but also the information sought must not be "otherwise reasonably available."  IRS regulations provide that, "*Information not otherwise reasonably available* means information that an internal revenue . . . employee reasonably believes, under the facts and circumstances, at the time of a disclosure, cannot be obtained in a sufficiently accurate or probative form, or in a timely manner, and without impairing the proper performance of [her] official duties, . . . without making the disclosure."  26 C.F.R. § 301.6103(k)(6)-1(c)(3).  While the regulation does not create a requirement to obtain the information first from the taxpayer before contacting third-parties, "the regulations reflect the fact-intensive nature of the inquiry." *Payne v. United States,* 289 F.3d 377, 382 (5th Cir. 2002).  The Fifth Circuit has held that the taxpayer may be considered a "reasonably available" source of necessary information.  *Id.* at 383 (citing *Barrett v. United States,* 795 F.2d 446, 450 (5th Cir. 1986)).  Because Special Agent Knighton was not performing official duties at the time of her disclosures and also because the

information sought was reasonably available from other sources, 26 U.S.C. §
6103(k)(6) cannot apply.

50.    The second potential statutory defense is a "good faith" defense
arising under 26 U.S.C. § 7431(b).   Under this section, no liability arises "with
respect to any inspection or disclosure . . . which results from a good faith, but
erroneous, interpretation of section 6103."

51.    The good-faith defense is judged by an objective standard analogous
to that employed in *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).   *Gandy v.
United States,* 234 F.3d 281, 287 (5th Cir. 2000)(citing in *Huckaby v. United
States,* 794 F.2d 1041, 1048 (5th Cir. 1986)); *Snider,* 468 F.3d at 507 (same).
Under *Harlow,* a government official may avoid liability for violating a
constitutional or statutory right where that right is not clearly established such that
a reasonable person would have known that his or her conduct violated the right.
*Id.; see also Jones v. United States,* 97 F.3d 1121, 1124 (8th Cir. 1996).   The
government bears the burden of proving the good-faith defense.   *Snider,* 468 F.3d
at 507.

52.    A reasonable IRS special agent "can be expected to know statutory
provisions governing disclosure, as interpreted and reflected in IRS regulations and
manuals."   *Barrett v. United States,* 51 F.3d 475, 479 (5th Cir. 1995)(citing
*Huckaby,* 794 F.2d at 1048).

53.    In two separate provisions, the IRS Manual instructs: "Special agents will refrain from characterizing investigations as 'criminal' except for the initial interview of the subject in an administrative investigation or in those instances where this disclosure is necessary to obtain the information sought. Such a disclosure could be necessary if the witness is disinclined to cooperate."

54.    The IRS Manual also recognizes the expansive definition of "return information" and instructs that, "[w]hen interviewing witnesses, the special agent must remain objective and refrain from making comments regarding the subject that could be construed as derogatory."

55.    Furthermore, the plain language of the statute (§ 6103) prohibits the disclosure of, *inter alia,* "whether the taxpayer's return was, is being, or will be examined or subject to other investigation."   Thus, the disclosure that a particular taxpayer is under criminal investigation may be an unauthorized disclosure prohibited by § 6103.  *Barrett,* 804 F.2d at 1378.

56.    "If the immediate source of the information claimed to be wrongfully disclosed is tax return information ('return' or 'return information' pursuant to § 6103), the disclosure violates § 6103, ***regardless*** of whether that information has been previously disclosed (lawfully) in a judicial proceeding and has therefore arguably lost its taxpayer 'confidentiality.'"  *Johnson v. Sawyer,* 120 F.3d 1307, 1318-19 (5th Cir. 1997).   Accordingly, the disclosures described herein do not

become authorized simply because a grand jury subpoena requesting some or all of the same information was left with the witness following the witness' interview.

## COUNT I
### (Disclosures to Robert Duvall)

57.     Paragraphs 20-23 are incorporated herein as if set forth verbatim.

58.     On or about May 23, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she disclosed to Mr. Duvall that she was conducting a "criminal investigation of Donna and Robert Poimboeuf and their company D&G Holdings, LLC."

59.     On or about May 23, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she informed Mr. Duvall that "Mr. & Mrs. Poimboeuf were enjoying an unjustified high lifestyle" and that her criminal probe was focused on identifying the funds to support their lifestyle.

60.     Special Agent Knighton's statement that Mr. & Mrs. Poimboeuf were enjoying a "high lifestyle" is clearly "information gathered during the course of an investigation" and therefore constitutes return information.  Further, disclosing a taxpayer's "net worth" is expressly prohibited in 26 U.S.C. § 6103(a)(2)(A).

61.     The nature of Special Agent Knighton's accusatory statement that Mr. and Mrs. Poimboeuf were unjustly enjoying a "high lifestyle" indicates it was

made intentionally to harm the reputation of the Plaintiffs and was therefore willfully made or the result of gross negligence.

62.     Special Agent Knighton's gratuitous statement that Mr. & Mrs. Poimboeuf were under criminal investigation is contrary to clearly stated guidance in the IRS Manual to "refrain from characterizing investigations as 'criminal.'"

63.     Special Agent Knighton's disclosure that Mr. & Mrs. Poimboeuf were under criminal investigation was made willfully, or by reason of gross negligence.

## COUNT II
### (Disclosures to Hardy Foreman)

64.     Paragraphs 24-31 are incorporated herein as if set forth verbatim.

65.     On or about November 17, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she asked Mr. Foreman whether he "knew Mr. and Mrs. Poimboeuf were involved in tax evasion."  This disclosure goes well beyond informing Mr. Foreman of the nature of Knighton's investigation and makes an affirmative accusation of criminal behavior.

66.     Special Agent Knighton's statement that "Mr. and Mrs. Poimboeuf were involved in tax evasion" was not only contrary to clearly stated guidance in the IRS Manual to "refrain from characterizing investigations as 'criminal,'" but also this statement was plainly gratuitous and derogatory.

67.    The nature of Special Agent Knighton's accusatory statement that "Mr. and Mrs. Poimboeuf were involved in tax evasion" indicates it was made intentionally to harm the reputation of the Plaintiffs and was therefore willfully made or the result of gross negligence.

68.    On or about November 17, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she asked Mr. Foreman whether he "knew the type of high lifestyle [Mr. & Mrs. Poimboeuf] were enjoying."

69.    Special Agent Knighton's statement that Mr. & Mrs. Poimboeuf were enjoying a high lifestyle is clearly "information gathered during the course of an investigation" and therefore constitutes return information.  Further, disclosing a taxpayer's "net worth" is expressly prohibited in 26 U.S.C. § 6103(a)(2)(A).

70.    The nature of Special Agent Knighton's accusatory statement that Mr. and Mrs. Poimboeuf were unjustly enjoying a "high lifestyle" indicates it was made intentionally to harm the reputation of the Plaintiffs and was therefore willfully made or the result of gross negligence.

71.    On or about November 17, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she stated to Mr. Foreman that, "whether [he] was aware of it or not, the Poimboeufs are enjoying a very high lifestyle."

72.    Special Agent Knighton's statement that Mr. & Mrs. Poimboeuf were enjoying a very high lifestyle is clearly "information gathered during the course of an investigation" and therefore constitutes return information.  Further, disclosing a taxpayer's "net worth" is expressly prohibited in 26 U.S.C. § 6103(a)(2)(A).

73.    The nature of Special Agent Knighton's accusatory statement that Mr. and Mrs. Poimboeuf were unjustly enjoying a "very high lifestyle" indicates it was made intentionally to harm the reputation of the Plaintiffs and was therefore willfully made or the result of gross negligence.

74.    On or about November 17, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she asked Mr. Foreman whether he had "visited [Plaintiffs'] laboratory in Pleasant Hill Louisiana."

75.    The IRS Manual explicitly states that, "Return information includes information extracted from a return (e.g., the names of dependents, *locations of business assets*, bank accounts, etc.)."

76.    Special Agent Knighton's disclosure of the location of business assets was made willfully, or by reason of gross negligence.

77.    On or about November 17, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she displayed to Mr. Foreman a binder containing Citizens National Bank statements related to

D&G Holdings dating back to 2012.  Knighton even pointed out to Mr. Foreman a particular account and asked if he previously was aware of the account.

78.     The IRS Manual explicitly states that, "Return information includes information extracted from a return (e.g., the names of dependents, locations of business assets, **bank accounts**, etc.)."  Additionally, the bank statements revealed to Mr. Foreman is clearly "information gathered during the course of an investigation" and therefore constitutes return information.

79.     Special Agent Knighton's disclosure of bank records was made willfully, or by reason of gross negligence.

80.     On or about November 17, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she asked Mr. Foreman whether he had received all of Plaintiffs' 1099-Misc. forms, particularly "the one issued by Novitas Solutions, Inc."

81.     Disclosing a taxpayer's "source, or amount" of income is expressly prohibited in 26 U.S.C. § 6103(a)(2)(A).  Further, the existence of a 1099-Misc. form was also the product of investigation or information extracted from Plaintiffs' tax returns, and was therefore return information.

82.     Special Agent Knighton's disclosure of the source of Plaintiffs' income was made willfully, or by reason of gross negligence.

## COUNT III
### (Disclosures to Camille Millen)

83.     Paragraph 32 is incorporated herein as if set forth verbatim.

84.     On or about May 16, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she stated to Camille Millen that Mr. & Mrs. Poimboeuf were enjoying a "high lifestyle" and began asking questions relating to Mr. & Mrs. Poimboeufs' assets.

85.     Special Agent Knighton's statement that Mr. & Mrs. Poimboeuf were enjoying a high lifestyle is clearly "information gathered during the course of an investigation" and therefore constitutes return information.  Further, disclosing a taxpayer's "net worth" is expressly prohibited in 26 U.S.C. § 6103(a)(2)(A).

86.     The nature of Special Agent Knighton's accusatory statement that Mr. and Mrs. Poimboeuf were unjustly enjoying a "high lifestyle" indicates it was made intentionally to harm the reputation of the Plaintiffs and was therefore willfully made or the result of gross negligence.

87.     On or about May 16, 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she stated to Camille Millen, in reply to Ms. Millen's statement that the Plaintiffs were very good people, that, "good people are not under investigation by the federal government for tax crimes."

88.     Special Agent Knighton's statement that Mr. and Mrs. Poimboeuf are not "good people" because they were "under investigation by the federal government for tax crimes" was not only contrary to clearly stated guidance in the IRS Manual to "refrain from characterizing investigations as 'criminal,'" but also this statement was plainly gratuitous and derogatory.

89.     The nature of Special Agent Knighton's accusatory statement that Mr. and Mrs. Poimboeuf were are not "good people" because they were "under investigation by the federal government for tax crimes" indicates it was made intentionally to harm the reputation of the Plaintiffs and was therefore willfully made or the result of gross negligence.

## COUNT IV
### (Disclosures to Tammy Jackson)

90.     Paragraph 33 is incorporated herein as if set forth verbatim.

91.     In or about May 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she stated to Tammy Jackson that she was "conducting a criminal investigation of Mr. & Mrs. Poimboeuf."

92.     Special Agent Knighton's gratuitous statement that Mr. & Mrs. Poimboeuf were under criminal investigation is contrary to clearly stated guidance in the IRS Manual to "refrain from characterizing investigations as 'criminal.'"

93.     Special Agent Knighton's disclosure that Mr. & Mrs. Poimboeuf were under criminal investigation was made willfully, or by reason of gross negligence.

## COUNT V
### (Disclosures to John Manno)

94.     Paragraph 34 is incorporated herein as if set forth verbatim.

95.     In or about May 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she stated to John Manno that she was "conducting a criminal investigation of Mr. & Mrs. Poimboeuf, and of D&G Holdings, LLC."

96.     Special Agent Knighton's gratuitous statement that Mr. & Mrs. Poimboeuf, and D&G Holdings were under criminal investigation is contrary to clearly stated guidance in the IRS Manual to "refrain from characterizing investigations as 'criminal.'"

97.     Special Agent Knighton's disclosure that Mr. & Mrs. Poimboeuf were under criminal investigation was made willfully, or by reason of gross negligence.

## COUNT VI
### (Disclosures to Pam Atchinson)

98.     Paragraph 35 is incorporated herein as if set forth verbatim.

99.     In or about April 2017, Special Agent Jamie Knighton made an unauthorized disclosure of Plaintiffs' return information when she stated to Pam

Atchinson that the IRS "was performing an internal audit of Mr. and Mrs. Poimboeuf, and of D&G Holdings, LLC."

100.   Special Agent Knighton's gratuitous statement that Mr. & Mrs. Poimboeuf, and D&G Holdings were the subjects of an internal audit investigation disclosed "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing" and is therefore expressly qualifies as return information under 26 U.S.C. § 6103(a)(2)(A).

101.   Special Agent Knighton's disclosure that Mr. & Mrs. Poimboeuf were under an internal audit investigation was made willfully, or by reason of gross negligence.

WHEREFORE, Plaintiffs demand judgment be entered against the United States of America and in favor of each Plaintiff individually and that, pursuant to 26 U.S.C. §§ 7431(c) and 7430, such judgment include:

(1) An award of damages to each plaintiff in an amount equal to $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which the defendant is found liable, or in the sum of the actual damages sustained by the Plaintiffs as a result of such unauthorized inspection or disclosure, whichever is greater; and

(2) An award of punitive damages for each unauthorized inspection or disclosure found to be willful or the result of gross negligence; and

(3)  An award of the costs of bringing this action; and

(4)  An award of the reasonable attorneys' fees incurred by the Plaintiffs in

   bringing this Action; and

(5)  Any such other relief as may be just and proper.


            Respectfully submitted,

            Donna Poimboeuf
            Robert Poimboeuf
            D&G Holdings, LLC


      By/s/ *Jason B. Freeman*
         Jason B. Freeman
         TX Bar # 24069736
         Freeman Law, PLLC
         2595 Dallas Parkway, Suite 420
         Frisco, Texas 75034
         Telephone: 214.984.3410
         Fax: 214.984.3409
         Jason@freemanlaw-pllc.com

         and

         Ray C, Mayo, Jr., Pending *Pro Hac Vice*
         820 Jordan Street, Suite 480
         Shreveport, Louisiana 71101
         Phone: (318) 222-1384
         Facsimile: (318) 425-1644
         rmayo99421@aol.com

         and

         Ray M. Shepard, Pending *Pro Hac Vice*

THE SHEPARD LAW FIRM, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: (410) 255-0700
Facsimile: (443) 773-1922
Ray@Shepard.Law